Good morning, Your Honors, and may it please the Court. Your Honors, there are 114 total claims in the three patents in this case, and I submit that the clear pattern of those claims and the evolution of those claims, starting from the beginning, clearly suggests that the District Court erred in finding that the phrase tubular member had a gloss on it, requiring that it be of two parts, a flexible part and a rigid part. And I suggest that that is so consistent with Phillips and all the other cases that this Court has decided. The starting point, as in all cases, is the claim language. The claim language says nothing about flexibility in the claims that are asserted. It calls for a tubular member. The District Court agreed that the literal interpretation of tubular member, the ordinary meaning, has no flexible component, but the District Court went on to impose a flexible component on that term. Because of the usage in the specification of flexible, so it threw out. Isn't that why the District Court erred? That was one of the reasons, and I submit that the District Court erred in that respect, and I would note that the examiner agreed with our interpretation, because in one of the three patents, the 882 patent, the examiner rejected claims 33, 35, and 36. 33 was too a tubular member. The examiner rejected that claim as anticipated by an Ingram reference. The examiner had to resort to kill marks, which disclosed a flexible tube portion, to reject 35 and 36, which had the flexible tube limitation, showing the examiner did not think that claim 33, the broad claim to tubular member, had a gloss on it, requiring that the claim structure, and I will get to the specification, which I don't think is inconsistent with any of this. The claim structure, I think, overwhelmingly supports our position. What about the theory that the examiner was giving that usage its broadest reasonable interpretation during examination, without having a mindset as to what it really included? Your Honor, the 882 patent, in which that office action took place, had a claim just like claim 3 in the 645 patent. It said, said flexible tube member. The examiner, if the examiner was following the logic of the District Court, the examiner would have read the broad claim tube member as a flexible tube member, and could not have done what he did. So I submit that the basic rule that examiners give the broadest reasonable interpretation does not apply to this case, because the broadest reasonable interpretation would have put the same gloss that the District Court put on it, if the District Court were right. And I submit the District Court were wrong. And if you look at all the claims in the three direct, there are 14 independent claims, and they recite tubular member or tube member, and those claims have a direct or indirect dependent claim calling for a flexible tube member, certainly suggesting that flexible was not part of the broad claim. Two of those claims in the 882 patent, 33 and 44, merely recite the tubular member comprises a flexible tube portion and a rigid tube portion. Why is that significant? It's significant because Arvin Meritor argues that the whereby clause injects an additional limitation into the dependent claims in the other case. These two claims inject no additional limitation, because the District Court construed tubular member to have a flexible portion and a tube portion, and that's exactly what the dependent claims in that 882 patent covers. Now as to the whereby clause, the cases make clear, the Texas Instrument case, merely by way of example, that if the whereby clause merely adds a logical result from the language that is added in the dependent claim, you ignore it. Arvin Meritor says, well, it doesn't add a logical result only because it adds the word sealed airflow conduit, suggesting that this is an addition that wasn't in the basic claim. Well, that is not so, because all of these claims, all of them, call for a rotary, I'll use the exact language, a rotary union assembly. The specification makes clear, and it is true, that all rotary union assemblies have sealed air systems. That's why you have this rotary assembly, to maintain the sealed air system. What the dependent claims do, claim 5, by way of example, in the 645 patent, it says if you have it out of alignment and you create a problem with that sealed airflow system, then you use a flexible tube. That's a dependent claim. So their argument on whereby, I submit, is not well taken. Now, the prosecution history, I submit, also reinforces this, and I don't think that the specification is at all inconsistent with anything I'm saying. In the prosecution history, the original claim 1 called for a tube member, and it also called for a rigid shaft member, but it had some additional language, said flexible tube. The examiner said there was no antecedent for that, and issued a section 112, paragraph 2 rejection. So what did the applicant do? He could have done one of two things. He could have added the word flexible to said tube member, or he could have deleted said flexible tube member, and that's what the applicant did. He deleted said flexible tube member, making clear that he did not want claim 1, which is the counterpart of the, which is one of the claims we're asserting, and also the counterpart of claim 15, which combine those two elements, making it clear that he did not want that claim encumbered by the record. He left it in claim 3, and the explanation for why he left it in claim 3 is absolutely clear from the record. If you look at page 2062, the examiner did not reject claim 3. He rejected claims 1 to 14, but he pointed out only three claims, claim 1, claim 9, and claim 13. He never focused on claim 3. Now those are the claims, but how do you get around the problem, the difficulty, that in the specification, just about every place that the applicant talks about tube, he says flexible tube? Here's how I get around it, Your Honor. They rely on the fact that there's only one embodiment, and the one embodiment uses flexible tube. They also rely on the fact that the words the invention were used. The Liebel-Florsheim case has facts very parallel to this. They had only one embodiment that involved a pressure jacket. They talked about the invention. They had claim differentiation, just as we do. They had multiple objectives. In this case, there are eight objectives set forth in the patent. Only one of them, the fourth objective, deals with the flexible tube portion. The part of the description of the invention has eight, I counted them, at least eight separate elements that are not in the main claim, that Arvin Meritori doesn't argue are in the main claim. They're all listed under summary of the invention. One of them is an O-ring. The O-ring is in a dependent claim, claim 3. It's not in claim 1. They don't argue that because it's listed under the invention, it should be in claim 1, nor do they argue that any of the other seven elements in the summary of the invention that are listed under the summary of the invention should be in claim 1. The point is that it is clear from this specification and from the claim structure that what the applicant was doing was he was saying, here are all the aspects of a broad invention. One of them is a flexible tube portion to deal with misalignment problems, but it is clear that the applicant was not claiming all of them in a single claim, because had he been claiming all of them in a single claim, he would not have put O-ring in claim 3, and he would not have put some of the other elements in other claims, and he would not have not even claimed some of the other elements. Yet, they're all in the summary of the invention, and the abstract is the same way. The abstract lists everything. It doesn't even use the word the invention. It just lists everything. The case is made clear that merely because there's a single embodiment, merely because the words the invention are there, the cases, as I read them, support the notion that you need to look at the whole picture. You need to look at the prosecution. You need to look at the claims. Isn't it fairly significant that you do have in the summary of the invention, and I counted, and you might have felt there were more or less, but I came up with five references in the summary of the invention to a flexible air hose? Your Honor, because a flexible air hose is part of what they wanted to cover in their patent, and it is claimed in a number of claims. It is just not claimed in the generic claims. The fact that it refers to a flexible tube multiple times is merely a reflection of the fact that that was one aspect of their invention, but it was not the broadest aspect of their invention. If you look at the paragraphs just preceding the summary of the invention, it starts at the bottom of column one on page 106. The present invention provides, and then it talks in the first paragraph about the position of the hubcap, the position of the housing on the outside of the hubcap, and makes clear that that is a broad invention. Well, that was certainly the main focus. I mean, that did seem to be the main focus, to have it out there to eliminate the heating and the fire problem under pressure. And that was the basis for the examiner's allowance of the case. It is clear from the prosecution history. It is clear from the summary of the interview that the examiner focused on that, and it is clear from the amendment that followed it that that was the focus. All I am saying is, whoever wrote this wrote the invention broadly as covering all the things that he wanted to include in the claims. But it is clear from what happened during the prosecution that he was not putting all those things in the generic claims, because if it were clear, he would have included all the things. And it is true that the word flexible is used multiple times, and it is true in Liebel-Flarschein that the word pressure jacket was used multiple times. And it is also true that in Phillips, angled bafflet was used multiple times, and formed an aspect of every embodiment in the case. My point is that all that shows is that he wanted to cover that in some claims. It doesn't show that he wanted to cover that in the generic claims, and his action in the prosecution makes clear, I submit, that he did not want to cover that in the generic claims. Now I see I'm running into my rebuttal time. Yes, you are. Let's hear from the other side, and we'll save your rebuttal time, Mr. Dennis. Mr. Weiss? May it please the Court. This is one of those rare cases in which the specification, the prosecution history, the extrinsic evidence, and the claims themselves, and I'm referring to this reading of tubular member to require flexibility, and I'd like to address each of those in turn. Turning first to Jennifer Shaw's question about the specification, this isn't a case in which we are relying solely on the fact that the specification twelve times recites that the tube must be flexible, and never, ever has a disclosure of any kind or even a suggestion of a rigid tube. This is a case in which the very second sentence of the summary says, and I'm on column 2, line 35, that the rotary union assembly of the present invention communicates through the use of a stationary flexible air hose. The present invention, which this Court has said repeatedly, is language in a specification not tied to an embodiment, but that describes, that is a term of limitation, not a description of a particular way in which the invention can be adopted. Now, Mr. Dunner says, well, there was language in libel floorshine about present invention, but if you look at the patent in libel floorshine, which is distinguishable from this case in many other ways as well, what it says, and it's on column 2, line 59 of the patent that issued libel floorshine, it says there, according to the principles of the present invention, and it then goes on to describe a particular, one of several embodiments that is disclosed in the specification. That's not the case here. This is a specification that repeatedly says that the present invention includes a flexible tube or flexible air hose. It is not true, as Mr. Dunner says, that although the specification recites eight objects, only one of them refers to the functionality that a flexible air hose provides. In fact, six of the eight objects in the specification directly address the functionality of a flexible air hose, and it is not true, Jerry Shaw, that, I mean, it's not really relevant what the major purpose or major objective of an invention is, but I submit that it is actually not the case that the major objective was removing the rotary union housing from the lubrication compartment. If you look at column 1, line 50, the specification says in the background there are several shortcomings with the present state of the art. The first one they say, the rotary union assemblies employed in these before the rotary seals begin to leak, and it then goes on to explain at the bottom of column 1 and the first two paragraphs of column 2 that the problem with what is reducing the lifespan of these seals is axial misalignment. It specifically says on line, the very next column, column 2, line 24, the rotary union assembly should also accommodate off-center alignments of the axle spindle and hub caps without incurring additional wear on the air seals in the assembly, which further shortens the life of the assembly. The rotary union assembly of the present invention achieves these objectives as well. You're saying that's where the flexibility point comes in. Exactly. And in fact, the district judge in the district court, plaintiff's counsel, appellant's counsel, told the district court, and this is on pages 51, 57, and 58 of the appendix in this case, told the district court that rigidity of the tube member in the prior art was a quote, major flaw because with the quote, anticipated misalignment, rigidity causes excessive wear on the seals through pivoting. And as they pointed out in their papers to the district court, they knew that because Mr. Ingram, the purported inventor here, was the president of our company at the time that the prior art patents were applied for, he was criticizing the 949 and 979 patents because they used a rigid tube. And although this court doesn't need to look at the rather eye-popping extrinsic evidence in this case in which Mr. Ingram wired himself for a conversation, which he introduced to the district court for the purpose of revealing that he had the full scope of the invention at the time he disclosed it to the engineer, in that evidence, he repeats over and over and over again, in the same moderate fashion that the specification recites, that flexibility is required. I must have flexibility. Suppose at the time after all of this happened, and at the time that the prosecution was being conducted, it looked as if the principles of the invention were being practiced, and that the only difference was that if you had an appropriate seal, maybe you didn't need the apparently very modest flexibility. There's nothing that really excludes such a change of interpretation. Is there? There is precedent, which says that there's nothing wrong with adjusting your claims to embrace potentially infringing devices that make small changes. How does that fit with you? There's absolutely nothing wrong with doing it, but it is very clear that if you are going, during prosecution, you are going to broaden your claims, you need to do so very clearly so that persons of skill in the art know what they have to invent around. In this case, and this goes to Mr. Dunner's prosecution history arguments, the evidence shows precisely, precisely to the contrary. That is, prior to the examiner's rejection of the original patent claims, a preliminary amendment was introduced that added three different claims, and there was a highly revealing one-paragraph set of remarks, which are reprinted at pages 2051 and 2052 of the appendix, in which the inventor explains to the examiner what he's doing and why he's doing it. Now, this is fully discussed in our briefs, but in that one paragraph, he manages to get around to mentioning and emphasizing the flexible hose portion three times and concludes with the following sentences. By providing the tubular member with the flexible hose portion, the annular airtight seal between the tubular member and the axle fitting can be maintained even when the fitting is out of axial alignment with the housing rotatably mounted about the downstream portion of the tubular member. As such a configuration has not been found in the prior art, the new claims have been added to cover such an assembly without reciting the rigid shaft member as being a separate element of the flexible hose member. Now, with respect to the claims, Mr. Dunner has focused a lot of his argument on claim differentiation, and I want the court to be as clear as I can about the following point. Their construction of tubular member ensures redundancy in claims in every one of their three patents, and our claim construction eliminates any redundancy between any of the three claims, and I want to explain why. First of all, if the court will look at the 645 patent on column 9, this is one of the claims. Mr. Dunner says, well, you know, there are other independent claims, but they don't talk about a stationary, they don't talk about a tubular member. They talk about a flexible tube member and a stationary shaft. But when they use tubular member in 15, one of the three added claims, there's no reason to import the limitation of flexibility into that. We'll look at column 9. This is claim 13, which begins on line 34. It addresses a rotor reunion assembly, and the third element of it is the flexible tube, and this is line 44, the flexible tube member that Mr. Dunner is referring to. The very next element, which is line 52, recites a second fitting engaging said downstream end portion of said tubular member. That is, as the district court noted in his order, that is the first instance of the word tubular member. It includes an antecedent. The antecedent is obviously a flexible tube member. That's the same tubular member that is recited in claim 15 and in the dependent claims 16 and 17, and they don't have an answer for that. Now, with respect to claim 15, 16, and 17, they say because claim 17 has a where-in, where-by clause that says where in at least a portion of said tubular member is flexible, that shows that claim 15, which just talks about a stationary tubular member, must not include the limitation of flexibility. Now, I want to say two things about that. First of all, if that's true, then they have no answer for why the parallel claim 5 is not redundant of claim 3. But redundant claims are not unusual? No, no, they're not at all. And in fact, but when somebody is claiming, when somebody is trying to defend a claim construction based on a claim differentiation argument over the specification and the prosecution history and the extrinsic evidence, this court has said it only raises an inference that can be rebutted by any of those three things, the person claiming claim differentiation has got to... The argument from claim differentiation is that the inventor acted precisely and the invented actor purposefully. This is a case in which the examiner told them that there was an antecedent basis problem. They didn't correct that in claim 3, which refers to said flexible member. They also, they not only didn't correct it in the existing patent, they filed two continuation patents that have exactly the same what they call clerical errors, claim 9 in the 019 patent and claim 9 in the 882 patent, and we've already discussed claim 13 in this particular patent. That is, they are arguing that they were, well, once this antecedent basis was identified to us in the rejection, we were really, you know, we got very careful to make sure that we were differentiating our claims. But their argument, their construction concedes that there are four redundancies over three patents, and to this day they have not filed a certificate for correction of a clerical error to correct what they say was a clerical error. Now, our reading of this language, and this is also important, our reading of this language eliminates all of these redundancies, and while we're not claiming, we're not making an affirmative claim of claim differentiation, we don't have to. We have the specification of the prosecution history and the extrinsic evidence. If you look at claim 15 versus claim 17 or claim 3 versus claim 5, it is very apparent what's happening. The flexibility that's inherent in claim 15 in the term tubular member serves the overall patent's stated objection that I referred to earlier in the specification of, quote, minimizing any wear on the air seals that is caused by axial misalignment. And claim 15 recites that it does so by producing an airtight seal where the tubular member meets the axle that is at one end of the tubular member. It doesn't have any recitation about the seal at the other end where the tube, tubular member, meets the rotary union housing. There is nothing in claim 15, there is nothing in the common specification that requires that there be a fully sealed airflow conduit or that there be an airtight seal at the rotary union housing end. And that's what claim 17 does. Claim 17 requires that air continue to flow through a sealed airflow conduit even at those times when the axle and the rotary housing are out of alignment. You don't even have to be skilled in the art to know this. A truck is rolling down the road and it hits potholes and it hits bumps and the district court had a video exhibit that was shown to them showing a truck running down the road and the wheels are going up and down. When it's up and down there is an inadvertent misalignment. And during those periods under claim 15 and under the general specification there are instances of misalignment where the seal doesn't work perfectly. The preferred embodiment actually recites weep holes at that junction to accommodate leaking air. You don't have to be constantly inflating the tires every possible second. You inflate them as the amount goes down. But as the truck goes in and out of axial alignment there are instances where at that second junction which isn't called out in 15 or in the specification there is a leak. It is not a perfectly sealed conduit. And what claim 17 says, like claim 5 and the other claims that include the where-in-where-by clause is that when it is out of alignment you're making use of the flexibility for additional reason. That is, there is sufficient flexibility to maintain the seal at the housing end as well as the fitting end. And that is, you know, it's revealed among other things by the many, many claims in the patents. And I'll refer the court to claims 35, 48, 62, 64, 72, and 74 in the 882 patent that do specifically add a seal at the rotary housing end, what's called the downstream end of the flexible tube, for the purpose of creating a sealed airflow conduit. The fact that all these claims, including these where-in-where-by clauses and the other claims that I've referred to, are put in specifically and avowedly in order to achieve a sealed airflow conduit even when there is an axial misalignment reinforces the notion that claim 15, which refers to the union between the hose and the axle at that one end, is designed to promote the general purpose that the specification repeatedly says for the flexible hose, which is to minimize wear on the air seals caused by excessive pivoting in those instances when axial misalignment occurs. I see my time has... Any questions for Mr. Waxman? Thank you, Mr. Waxman. Thank you. Mr. Denneran, will you enlarge by the time that we've run over? Your Honor, Mr. Waxman has... I'd like to talk about his claim differentiation point and then I'd like to talk about the prosecution history point. Mr. Waxman, as he did in his brief, talks about the only approach that guarantees no redundancy is the Arvin-Meritor approach, and he pointed out that under our approach claim 5 would be redundant because claim 3 has the words said flexible tube member in it. But the fact is that it is obvious, it is absolutely obvious that when you have the words said flexible tube member referring back to a claim that doesn't talk about any flexible tube member, that that is an obvious mistake and it's a mistake that the examiner focused on the other claims and talked about said flexible tube member and Mr. Waxman did not mention the fact that the examiner did not focus on claim 3 and that explains why it wasn't amended. So there's no redundancy if you do what is obvious and that is if you recognize that said flexible tube member doesn't have a proper antecedent and was a mistake. There is no redundancy. Mr. Waxman does not talk about the claims in the 8A2 patent in which there is no whereby clause. All you do is add a flexible tube member and a sealed tube member and so their argument about whereby clause is knocked out by that. Now Mr. Waxman talked about the prosecution history and the statement accompanying claim 15, 16 and 17 and he refers to the last sentence saying that shows that the applicant wanted the word tubular member to be restricted to a flexible portion and a rigid portion. But this is a strange way to do it if that's what the applicant meant. He says as such a configuration has not been found in the prior art, the new claims have been added to cover such an assembly without reciting the rigid shaft member as being a separate element from the flexible hose member. It doesn't say by reciting, it says without reciting. He's converting that sentence into a positive when it is basically a negative. The configuration you're talking about is the configuration in the first part of this paragraph which is what the claims call for, namely a concept of providing a stationary tubular member extending between the fitting carried by the end of the sealed axis and the rotating housing secured to the hubcap for rotation with the hubcap. Now Mr. Waxman also referred to when I pointed out that there are eight separate items in the present invention, summary of the invention, that were not picked up by the claims. Mr. Waxman referred to the objects of the invention. There are eight objects. I'm not talking about that. I'm talking about elements in the summary of the invention which are described as the present invention which are not picked up by the broad claims. It includes an O-ring seal. It includes a through-flow fitting threadably secured to the extended end of the axle spindle. It includes a pair of bearing members, a spring-biased graphite element opposed channels, separate airlines which communicate with the valve stems on the pair of adjacent tires. Pressure-responsive valves are provided in each of the lines. A warning light. These are all part of the summary of the invention described as, quote, the invention. It is obvious that each of these elements is not intended to be picked up by every claim. Mr. Waxman also read from column one where he talked about wear, the fact that you have excess wear resulting in leaks. And then he morphed over to column two where he talks about the flexible tube element. Well, the patent also talks in column two, lines 52 to 55, as both the flexible air hose and the fitting through which it extends are stationary. Where is virtually eliminated? This juncture of the assembly. Keeping them stationary also contributes to the bottom line. Mr. Waxman also talked about some extrinsic evidence where one of their people was wired. I don't know whether that was lawful or not, but he was wired to record a conversation with the inventor. The inventor never identified a flexible air hose as one of the things he thought was possibly an invention. And moreover, that conversation is not even dated. We don't know whether that was long before the application was filed. Is this a recording of the conversation of the inventor who wired himself? The other person, somebody was wired there. I don't know who was wired. On the record it said the inventor wired himself. I don't know who was wired. But the point is, in North American Vaccine versus American Cyanamid, the court held that the fact that an inventor makes statements prior to the filing of an application does not mean that the claims are going to be restricted to those statements. None of those statements suggested that any aspect of what was described was going to be part of the claims. And nowhere did the inventor say that the flexible tube was something he thought was patentable. I see my time has expired. It has expired. Have you any questions? Any more questions for Mr. Dunner? Thank you both, Mr. Dunner and Mr. Waxman. The case is taken under submission.